IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONICA HATFIELD-BLAKE,

    Plaintiff,

vs.                                Case No. 09-1072-SAC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court enters judgment in accordance with the fourth sentence of 42 U.S.C. § 405(g), affirming the decision.

**I. Background**

After Plaintiff's applications for DIB and SSI were denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). On September 13, 2007, following a hearing, the ALJ issued a decision finding that Plaintiff is able to perform work existing in significant numbers in the economy and is, therefore, not disabled within the meaning of the Act. (R. 14-26). Plaintiff disagreed, and

sought but was denied Appeals Council review of the ALJ's decision. (R. 8-10, 6-9). Therefore, the ALJ's decision is the Commissioner's final decision which this Court reviews. *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir.2006).

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004); *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)); *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least

2

twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Wilson*, 602 F.3d at 1140.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920 (2008); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* Where, as here, Plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 416.920. This assessment is used at steps four and step five of the sequential evaluation process, which ask whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999).

**Erroneous records**

Plaintiff asserts three claims of error. The first and most significant claim of error asserted by Plaintiff is that the ALJ relied on records of some other claimant, which had been inadvertently included in the record below.

Both parties agree that the trial record erroneously included, as a portion of Exhibit 11F, three pages which pertained to another person's RFC.[1] The erroneously included document is indexed as a medical source statement of someone else's ability to do work-related physical activities. R 3. The Court's review of this claim of error has been complicated by the fact that the irrelevant record has recently been removed from the record on appeal, and the parties do not specify its content.

Both parties further agree that the ALJ alluded to the erroneous document in making his determination of non-disability, and did not reject it as pertaining to another claimant, or strike it from the record as he previously said he would do. *See* R. 655. Instead, his decision states of the irrelevant document:

> The undersigned does not give controlling weight to a treating physician's opinion documented in Exhibit 11F-255-258 because the doctor's opinion is conclusory and is not consistent with the longitudinal medical evidence. The doctor's opinion is more limiting than the claimant's actual daily activities.

R. 24.

Both parties also agree, however, that the ALJ did not include in this Plaintiff's RFC the limitations contained in the erroneous RFC. *See* pl's brief, p. 9, Comm'r br., p. 4. This indicates, as Plaintiff agrees, that the ALJ may have rejected the opinion contained in the irrelevant records. Pl. brief, p. 9. Nonetheless, Plaintiff contends that

---

[1]R. 390-393, originally numbered 255-258.

the ALJ did not provide specific reasons for rejecting the opinion of the erroneously included treating source, if he in fact did so, and may have considered the incorrect records "in evaluating [Plaintiff's] testimony regarding her daily activities and therefore her credibility." Pl. brief, p.10.

The Tenth Circuit, in a similar situation, used a harmless error analysis. *See Brewer v. Chater*, 116 F.3d 489, 1997 WL 338600 (10th Cir. June 20, 1997) (Table). There, as here, the record erroneously contained a record relating to a different claimant. The claimant complained on appeal that the ALJ relied on the erroneous exhibit in concluding that she did not suffer episodes of decompensation from a mental disorder. The Tenth Circuit agreed that the ALJ erred in relying on the exhibit, but upheld the ALJ's decision because it was supported by substantial evidence from the record as a whole. *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir.1996). Accordingly, this Court uses the same approach in reviewing the record.

The Court addresses Plaintiff's contention that the ALJ could have relied on the erroneous RFC in evaluating Plaintiff's testimony regarding her daily activities and therefore her credibility. The ALJ analyzed Plaintiff's daily activities as follows:

> The record documents that despite symptoms associated with her severe impairments, the claimant's activities are basically normal. She lives alone and takes care of her personal needs. The claimant drives a motor vehicle without assistance. She performs household chores such as laundry and housecleaning. The claimant shops outside of the home at least two times a week. She regularly spends time using a computer to communicate in chat lines and to communicate with her daughter. This activity requires prolonged sitting and use of her wrists which are activities inconsistent with her allegation of disabling back, neck, wrists and shoulder pain. In February 2005 a medical source opined that based on a review of the medical evidence, the claimant's symptoms were not disabling. (Exhibit 2F-88)

R. 24. But Plaintiff does not contest the accuracy of the above factual findings

5

regarding her daily activities, and the record fully supports them. The ALJ did not discredit Plaintiff's testimony regarding her daily activities, but accepted it. No conflicting testimony regarding Plaintiff's daily activities was presented. Because the findings regarding Plaintiff's daily activities are undisputed and were not discredited by the ALJ, the Court need not reach the issue of credibility.

The ALJ did, however, find that the Plaintiff's statements of disabling pain were not entirely credible, stating:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. ...
> The record documents that the claimant's symptoms associated with her severe impairments may cause some pain and discomfort. However, the medical evidence does not support the claimant's allegation that her symptoms are disabling.

R. 22. The ALJ thus found the Plaintiff's complaints of pain to be countered by the medical evidence, not by her testimony about her daily activities.

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [ (10th Cir.1988) ] (footnote omitted); see also *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding ... critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

*Wilson*, 602 F.3d at 1144, quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995).

The Court thus reviews the record to determine whether substantial evidence

6

supports the ALJ's finding that the Plaintiff's complaints of pain were greater than the medical evidence would support. The Court first reviews the objective medical evidence of the Plaintiff's physical condition. The Plaintiff's knee pain, which flared up in April of 2007, was relieved by chondroplasty of the affected area. Her carpal tunnel syndrome was successfully treated by surgery four years before the ALJ's decision, and her symptoms improved thereafter so that in 2007 she had only occasional stiffness, cramping, and mild tenderness. The Plaintiff's gastrointestinal symptoms had improved by 2005 as indicated by the fact that she no longer took medications for GERD. Although she complained of back and neck pain, an MRI in 2004 showed no central spinal or neural foraminal stenosis, no focal disk herniations or significant disk bulges, and no nerve root entrapment. An examining physician opined in 2007 that her cervical and dorsal spine regions were unremarkable and her lumbo-sacral region showed only mild tenderness and reduction in range of motion. Although she is HIV positive, she did not complain of pain from that condition, as evidenced by her "basically normal" physical examination in April of 2007 and her statement that she felt well.

The Court also reviews the objective evidence of the Plaintiff's mental condition. The Plaintiff's symptoms associated with depression improved after her one night's hospitalization in 2004, when she had a GAF of 50. In March of 2005, she had a GAF of 68, indicating that she was generally functioning pretty well but had mild symptoms or some difficulty in social, occupational, or school functioning. The Plaintiff discontinued medical treatment for that condition. The Plaintiff's psychological evaluation in April of 2005 indicated that she could mentally perform adequately in a competitive setting, and that her greatest limitation was pain or physical problems, not her mental condition. The

Plaintiff does not point to any more recent findings in the record regarding her mental condition.

Plaintiff does, however, contend that the ALJ mischaracterized the conclusion the psychologist who performed her psychological evaluation in April of 2005. Plaintiff contends that the ALJ erroneously interpreted the psychologist's report to mean that the Plaintiff could work, rather than to mean that the Plaintiff could work to the extent that her pain symptoms were controlled.

The relevant portion of the psychological evaluation by Dr. Stephen Hoyer, Ph.D., states of the Plaintiff:

> She clearly has the necessary intelligence and cognitive functioning to be effective in many work environments. Her greatest limitation does appear to be chronic pain and the other physical symptoms that she experiences. To the extent that the symptoms can be controlled, it seems likely that she should be able to function well in any number of job roles.

R. 389. The ALJ's reference to that report states:

> An evaluating licensed psychologist opined in April 2005 that the claimant could mentally perform adequately in a competitive setting. ... The doctor opined that the claimant had adequate cognitive and social skills for competitive employment. Her main limitations were due to her pain which is currently controlled with medications.

R. 24.[2]

Given the plain language quoted above, and the fact that Dr. Hoyer is a psychologist and not a medical doctor, the Court finds it more reasonable to construe the ALJ's statement that the Plaintiff's pain "is ... controlled with medications," as the ALJ's own conclusion, rather than as the ALJ's reference to Dr. Hoyer's findings. The

---

[2]Plaintiff's brief at page 13 misquotes this language.

Court thus finds no support for the Plaintiff's contention that the ALJ misconstrued the psychological evaluation.

Plaintiff additionally challenges the accuracy of the ALJ's finding that the Plaintiff's pain is "currently controlled with medications." Contrary to the Plaintiff's assertions, *see* Pl. Brief, p. 15, the ALJ made several findings supporting this conclusion.

> The claimant's symptoms associated with the digestive system have been controlled with medical treatment. (Exhibits 2F-57, 88, 4F) In February 2005 it was documented that the claimant was not taking medications for GERD which indicates improved symptoms.

R. 20.

> The record documents that the claimant's symptoms associated with diabetes mellitus, GERD, pancreatitis and gastritis have been controlled with medications. (Exhibits 2F-57, 88) In February 2005 a medical source documented that the claimant was not taking medications for GERD which is an indication of improved symptoms.

R. 23.

> In regards to the claimant's mental impairments, the claimant's symptoms associated with depression have included anxiety, insomnia and social withdrawal. The record documents that these symptoms have been controlled with medications.

R. 23.

The Court has reviewed the record, particularly the Exhibits cited above by the ALJ. These include specific lists of the medications taken by the Plaintiff, their type, dosage, and effectiveness. Although Plaintiff suggests that she was not taking pain medication, the record reflects that as recently as April 30, 2007, Plaintiff was taking hydrocodone-Acetaminophen. R. 254.

Plaintiff points to evidence of the Plaintiff's pain after Dr. Hoyer's 2005

evaluation, including Dr. Orender's note in January of 2007 that the Plaintiff suffered from arthralgias, and Dr. Abu-Libdeh's note in January of 2007 that the Plaintiff displayed a number of trigger points. But as the Plaintiff notes, neither of those physicians prescribed pain medication for the Plaintiff, although one prescribed an anti-depressant. Plaintiff speculates[3] that no pain medication was prescribed because the doctors determined that medications would not control the Plaintiff's symptoms, but it is just as reasonable to infer that no pain medication was prescribed because the Plaintiff did not request such medications and/or the physicians determined that the Plaintiff's pain was not so severe as to warrant any pain medication beyond the hydrocodone-Acetaminophen the Plaintiff was already taking. *See* R. 254 (showing Plaintiff taking that medication in April 30, 2007).

Having reviewed the record, the Court finds that substantial evidence supports the ALJ's findings that the pain from Plaintiff's physical and mental impairments was controlled by medications and was not disabling.

**Duty to Recontact Treating Physician**

The Plaintiff claims that the ALJ erred by not recontacting a treating physician whose medical report was internally inconsistent. Plaintiff relies upon 20 C.F.R. § 404.1512(e)(1), which states: "when the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled," we will ... "recontact your treating physician ... to determine whether the additional information we need is readily available."

---

[3]Plaintiff cites to medical books not included in the record.

The ALJ's findings regarding the treating physician, Dr. Orender, follow:

> On June 23, 2006, a treating physician gave the opinion that the claimant was disabled due to symptoms associated with musculoskeletal impairments. (Exhibit 25F-407) The undersigned does not give controlling weight to this opinion because the doctor's opinion is conclusory and not supported with medical evidence or specific functional limitations. In addition the doctor also gives an inconsistent opinion that the claimant's condition was stable so that the claimant could participate in an employment or training program. (Exhibit 25F-400)

R. 24.

Plaintiff contends that the ALJ found Dr. Orender's opinion, given June 23rd, to be internally inconsistent, triggering his duty to recontact her. But the record fails to support that contention. Instead, the ALJ found that one of Dr. Orender's reports, dated June 23, 2006, conflicted with another of her reports, dated in January of 2006. Specifically, on January 16, 2006, Dr. Orender checked a box in an SRS form indicating that the Plaintiff had "marked difficulty standing or walking which is expected to persist for at least 12 months and results in severe functional limitation"; but also responded "yes," to that same form's question whether the Plaintiff's condition was stabilized so that she could participate in an employment or training program. R. 245, 248 (Tr. 403, 400). Approximately six months later, Dr. Orender checked a box on a housing form, indicating that the Plaintiff was disabled. R. 241 (Tr. 407), dated June 23, 2006.

Dr. Orender's opinion of disability was not incomplete, but was refuted by the record and, according to the ALJ, was inconsistent with her January opinion. The evidence presented from Dr. Orender was not so inadequate for the ALJ to determine disability that it triggered the ALJ's duty to recontact her. "It is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is

11

the inadequacy of the evidence the ALJ 'receives from the claimant's treating physician that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (opinion on rehearing). Thus, the regulations do not require an ALJ to recontact a treating physician whose opinion is inherently contradictory or unreliable when the ALJ is able to determine from the record as a whole whether the applicant is disabled. *Cf Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008). Here, the ALJ did not find Dr. Orender's opinion incomplete or in need of clarification; he simply found it conclusory, unsupported by medical evidence or specific functional limitations, and inconsistent with her earlier opinion that the Plaintiff could participate in an employment or training program. Dr. Orender was not Plaintiff's only treating physician, and the records from the other treating physicians are contained in the record. Under these circumstances, no duty to recontact Dr. Orender arose. *See Sandoval v. Barnhart*, 197 Fed.Appx. 801, 806, 2006 WL 2964431, 4 (10th Cir. 2006); *Stokes v. Astrue*, 274 Fed. Appx. 675 (10th Cir. 2008).

IT IS THEREFORE ORDERED that the decision of the Commissioner is affirmed, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 1st day of June, 2010.

s/ Sam A. Crow  
Sam A. Crow, U.S. District Senior Judge